# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Stewart Manley,<br>　　　Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **1:16cv363 (AJT/IDD)** |
| | ) | |
| United States of America,<br>　　　Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Stewart Manley, a federal inmate proceeding pro se, has filed a civil action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§1346, 2671 et seq., seeking damages for property that was lost or stolen when he was transferred from FCI Phoenix to FCI Petersburg. By Order dated July 7, 2016, the complaint was deemed filed and the Clerk was directed to "send by certified mail, pursuant to Fed. R. Civ. P. 4(i), a copy of [that] Order and the complaint with exhibits (Dkt. No. 1) to the United States Attorney for the Eastern District of Virginia." Dkt. No. 11. Now before the Court are plaintiff's Motion for Default Judgment, Dkt. No. 14, which the United States opposes, Dkt. No. 19, and the United States' Motion to Dismiss, which is accompanied by a supporting memorandum and the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K), Dkt. Nos. 16–17, and is objected to by plaintiff, Dkt. No. 23. After consideration of these submissions, the United States' Motion to Dismiss will be granted, plaintiff's Motion for Default Judgment will be denied, and judgment will be entered in favor of the United States.

## I. Factual and Procedural History

On or about May 16, 2014, while confined in the FCI Phoenix ("PHX"), plaintiff was relocated from the medium unit to the special housing unit ("SHU") and an unknown PHX officer

was tasked with "packing-out" plaintiff's cell in the medium unit. Compl. ¶¶ 7–8. According to plaintiff, he was never provided with "an inventory of his personal or legal items, after thay [sic] were packed-out." Id. ¶ 9. On or about July 11, 2014, plaintiff was transferred out of PHX to FCI Petersburg ("PEM").[1] Id. ¶ 10. On approximately August 4, 2014, plaintiff received a delivery at PEM that included "one (1) box of legal materials," but he was missing some of the other items "packed-out" during his intra-facility transfer at PHX. Id. ¶ 11.

Plaintiff states that on or about August 24, 2014, after he had not received any further shipments from PHX, he contacted a counselor at PEM who agreed to contact a property officer in the Receiving and Discharge Department of PHX to inquire into the whereabouts of plaintiff's missing property. Id. ¶ 12; Dkt. No. 1, Ex. 5. According to plaintiff, the PEM counselor informed plaintiff that a PHX employee stated that "approximately twenty (20) boxes of personal and legal books" belonging to plaintiff had been left at PHX, and those boxes would be sent to plaintiff "at a cost not to exceed $300.00." Compl. ¶ 12. On or about September 4, 2014, plaintiff states that he contacted a unit manager at PEM to discuss why he had not yet received his property from PHX, and the PEM unit manager sent an email of similar effect to an employee at PHX on plaintiff's behalf. Id. ¶ 15. According to plaintiff, the unit manager received a response from PHX on approximately September 8, 2014, and advised plaintiff that his property would be sent to PEM "for an additional $188.32." Id. ¶ 16. Plaintiff states that a counselor then accompanied him to the commissary to purchase the additional postage, which plaintiff gave to the counselor to send to PHX. Id. ¶ 17. On or about October 3, 2014, plaintiff received two (2) additional boxes containing legal papers from PHX. Id. ¶ 20.

_____

[1] Due to stops at federal correctional institutions in Oklahoma City and Atlanta, plaintiff did not reach his final destination until several days later, on or about July 29, 2014. Compl. ¶ 10.

On November 4, 2015, plaintiff filed a "tort claim for $4,794.34; for lost/stolen [sic] personal and legal property" with the Federal Bureau of Prisons. Id. ¶ 21. On November 19, 2015, plaintiff received a response denying his claim (No. TRT-WXR-2016-00850). Dkt. No. 1, Ex. 36. Plaintiff filed a motion for reconsideration on November 30, 2015, which was denied on December 8, 2015. Dkt. No. 1, Ex. 38. On February 29, 2016, plaintiff filed the instant complaint pursuant to the Federal Tort Claims Act 28 U.S.C. §§ 1346(b), 2671 et seq.—but without reference to the substantive law of Virginia under which he believed the United States to be liable—seeking "no less than $4,794.34," plus interest for his lost/stolen property. Compl. In the complaint, plaintiff asserts that the unknown officers at PHX "were NOT engaged, in any way . . . in a law enforcement activity" when they lost/stole his property. Id. ¶ 5.

By Order dated July 7, 2016, the complaint was deemed filed, the clerk was "directed to send by certified mail, pursuant to Fed. R. Civ. P. 4(i), a copy of [the] Order and the complaint with exhibits (Dkt. No. 1) to the United States Attorney for the Eastern District of Virginia," and the United States was "DIRECTED to file an answer or other responsive pleading to the complaint within sixty (60) days of the date of service, pursuant to Fed. R. Civ. P. 12(a)(3)(A)." Dkt. No. 11. According to the United States Attorney's Office, the United States "received a copy of [the] July 2016 order from the clerk's office, [but] it has no knowledge of having received – through certified mail or otherwise – a copy of the complaint (or the exhibits to the same)." Dkt. No. 17 at 4. The Assistant United States Attorney assigned to this case states that after a significant of time passed without service of the complaint, he contacted the Staff Attorney's Office for the United States District Court for the Eastern District of Virginia, Alexandria Division, to identify the apparent service issue in an "attempted exercise of good-faith," but he does not indicate whether he was able to pinpoint the source of the issue. Id. at 4.

On August 8, 2016, plaintiff wrote the Clerk to inquire about obtaining "proof of service" on the United States. Dkt. No. 12. On August 17, 2016, the Staff Attorney's Office responded to plaintiff's missive, advising him that the "Order of July 7 constituted service of your complaint upon the United States, and directed the United States to file a response to the complaint within sixty (60) days," but that the response was not yet due. Dkt. No. 13. On October 31, 2016, plaintiff moved for a default judgment against the United States pursuant to Federal Rule of Civil Procedure 55(a) on the grounds that it had failed to respond to the complaint "some forty-two (42) [sic] days past the deadline set by the court." Dkt. No. 14. On November 29, 2016, the United States filed a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of jurisdiction with accompanying memorandum in support and an opposition to plaintiff's motion for default judgment. Dkt. Nos. 16–17, 19.

## II. Standard of Review

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge a court's subject matter jurisdiction in an action as an affirmative defense. A party may present a Rule 12(b)(1) motion in two critically different ways: first, it may contend that a complaint fails to allege facts upon which subject matter jurisdiction can be based; and second, it may contend that the jurisdictional allegations of the complaint are not true. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When, as here, subject matter jurisdiction is challenged on the basis that the complaint fails to allege facts upon which subject matter jurisdiction can exist, "all the facts alleged in the complaint are assumed true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration."[2] Id. Once

---

[1] A district court, when considering a 12(b)(6) motion to dismiss, generally grants plaintiff the following procedural protections: a plaintiff's well-pleaded allegations are taken as true, and the

subject matter jurisdiction has been challenged, plaintiff, as the party asserting jurisdiction, has the burden of proving that subject matter jurisdiction does in fact exist. Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty., 523 F.3d 453, 459 (4th Cir. 2008). Also pertinent here, pursuant to Federal Rule of Civil Procedure 55(d), no default judgment may be entered against the United States unless a "claimant establishes a claim or right to relief by evidence that satisfies the court."

### III. Analysis

Plaintiff has moved for a default judgment, pursuant to Federal Rule of Civil Procedure 55,[3] on the ground that the United States has failed to respond to his complaint within sixty days, as directed in this Court's July 7, 2016 Order. Dkt. No. 14. Plaintiff contends that the United States has yet to comply with this Court's July Order because its Rule 12(b)(1) motion "is NOT a 'responsive pleading'" within the meaning of Fed. R. Civ. P. 12(a)(3)(A). In plaintiff's view, the United States' failure to file a responsive pleading necessitates the entry of a default judgment on his behalf. Dkt. No. 14.

The United States contends that it was never "properly served with a summons and complaint as required both by the Federal Rules of Civil Procedure and this Court's July 2016

---

complaint is viewed in the light most favorable to the plaintiff as the nonmoving party. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Nevertheless, a court is not required to accept blindly all of the allegations in a complaint; the presumption of truth applies only to factual allegations, and a court may identify certain pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

[3] The relevant portion of Federal Rule of Civil Procedure 55 provides:

> **(a) Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

order." Dkt. No. 17 at 2. Therefore, it asserts, the sixty day period during which it must respond "has not yet begun, much less expired." Dkt. No. 17 at 2. Alternatively, the United States argues, pursuant to Rule 55(d), that plaintiff is not entitled to a default judgment because the court lacks subject matter jurisdiction over his claim, and this forecloses his ability to "demonstrate that he is otherwise entitled to relief on the merits." Dkt. No. 17. More specifically, the United States contends that 28 U.S.C. § 2680(c) "precludes jurisdiction over a FTCA claim based upon the loss of an inmate's property by BOP officials during a transfer of that inmate between BOP facilities," and therefore, plaintiff's claim must be dismissed. Dkt. No. 17 at 6.

In response, plaintiff appears to contend that the United States was actually served with the complaint, citing a response he received from the Staff Attorney's Office stating that the "order of July 7 [2016] constituted service of your complaint upon the United States and directed the United States to file a response to the complaint within sixty (60) days," but nonetheless failed to file an answer by the September 6, 2016 deadline. Dkt. No. 23. In addition, plaintiff argues that the United States' 12(b)(1) motion "ignores the statutory empowerment [sic] enacted by congress in 28 U.S.C. § 1346(a)(6) and 28 U.S.C. § 2671 et seq., granting the power to adjudicate and hear clains [sic] arising under the FTCA." Dkt. No. 23 ¶ 1.

Because the dispositive issue in both plaintiff's Motion for Default Judgment and the United States' Motion to Dismiss concerns subject matter jurisdiction, and more specifically, whether the United States' sovereign immunity has been waived to the extent that this Court has been conferred jurisdiction over this matter, the discussion of subject matter jurisdiction has been consolidated into one section. For the reasons which follow, because this Court lacks subject matter jurisdiction over plaintiff's claim, his Motion for Default Judgment, Dkt. No. 14, will be denied, and the United States' Motion to Dismiss, Dkt. No. 16, will be granted.

It is well established that the United States is immune from suit except to the extent that it has consented to be sued by statute.  See, e.g., United States v. Dalm, 494 U.S. 596, 608 (1990). Absent a statutory waiver, "sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994).  The FTCA is one such limited statutory waiver of sovereign immunity, and it subjects the government and its agencies to liability for losses caused by the negligent or wrongful acts of government employees acting within the scope of their employment.  28 U.S.C. § 1346.[4]  The FTCA thus permits the United States to be held liable—to the same extent as a private party—under the law of the place where a tortious act has occurred by conferring jurisdiction to the district courts for Government violations of state law, or breaches of duty under analogous federal law.  Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 969 (4th Cir. 1992).  Significantly, courts will construe the scope of the FTCA, and any other waiver of the Government's sovereign immunity, "strictly" in favor of the Government.  See, e.g., Lane v. Pena, 518 U.S. 187, 192 (1996).  In other words, when a district court is confronted with a purported waiver of the Government's sovereign immunity, it will construe any ambiguities in favor of immunity.  United States v. Williams, 514 U.S. 527 (1995).  Therefore, any waiver must

---

4 The FTCA provides, in relevant part:

> Subject to the provisions of chapter 171 of this title, the district courts, . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

be unequivocally expressed by Congress in the text of a statute.   United States v. Nordic Village, Inc., 503 U.S. 30, 33–34, 37 (1992).

Although plaintiff correctly asserts that his right to file certain claims against the Government is borne out of the limited waiver of sovereign immunity "enacted by congress in 28 U.S.C. § 1346(a)(6) and 28 U.S.C. § 2671 et seq.," Dkt. No. 23 ¶ 1, he neglects to account for the numerous exceptions enacted by Congress, which limit the jurisdiction of district courts over such claims.   One such exception states:

> The provisions of this chapter and section 1346(b) of this title shall not apply to –
>
> * * * *
>
> (c) Any claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer, . . . .

28 U.S.C. § 2680(c).   Significantly, § 2680(c) has been interpreted to preclude jurisdiction over FTCA claims based on the loss of an inmate's property by prison officers during the inmate's transfer to another facility.   Ali v. Federal Bureau of Prisons, 552 U.S. 214, 220–21, 227–28 (2008).   More specifically, the Supreme Court has interpreted "any," which modifies the phrase "other law enforcement officer," to mean law enforcement officers of all kinds; and it has concluded that Congress did not explicitly intend for Governmental immunity involving property claims to turn on "the type of law being enforced."   Id.   Pursuant to this interpretation, "BOP officers" who allegedly lose a prisoner's property during an inter-facility transfer are considered "law enforcement officers" within the meaning of § 2680.   Id.   Because plaintiff alleges that his personal property was lost or stolen following his July 11, 2014, transfer from PHX to PEM, his claim is virtually identical to the plaintiff's claim in Ali.   In this context, plaintiff's attempt to skirt

8

§ 2680(c) by alleging that the officers responsible for the loss of his property "were <u>NOT</u> engaged, in any way . . . in a law enforcement activity," is unavailing.

Accordingly, plaintiff has failed to demonstrate that, under these circumstances, an unequivocal waiver of sovereign immunity exists. <u>Welch v. United States</u>, 409 F.3d 646, 651 (4th Cir. 2005). Because sovereign immunity has not been waived, this Court lacks jurisdiction over this action, and the United States' Motion to Dismiss the complaint, Dkt. No. 16, must be granted. In addition, because no jurisdiction exists to entertain plaintiff's claim, he cannot establish "a claim or right to relief by evidence that satisfies the court," pursuant to Rule 55(d). Thus, whether or not the United States was properly served on July 7, 2016, plaintiff would not be entitled to a default judgment and his motion for such relief must be denied.

### V. Conclusion

For the foregoing reasons, defendant's Motion to Dismiss will be granted and the complaint will be dismissed with prejudice. Plaintiff's Motion for Default Judgment will be denied. An appropriate Order and Judgment shall issue.

Entered this 29th day of Sept. 2017.

Alexandria, Virginia

_____ /s/

Anthony J. Trenga
United States District Judge

9

/s/
Anthony J. Trenga
United States District Judge